UNITED STATES BANKRUPTCY
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                                                Chapter 11

   JULIA MORGUNOVA,                                  Case No. 17-41470 CEC

                Debtor.

-----------------------------------------------------------x

## AMENDED PLAN OF REORGANIZATION

## **TABLE OF CONTENTS**

DEFINITIONS .......................................................................................................................... 3

ARTICLE I  UNCLASSIFIED ADMINISTRATIVE AND TAX CLAIMS ........................... 6

    1. Administrative Claims. ..................................................................................................... 6

    2. Statutory Claims .............................................................................................................. 7

    3. Tax Claims. ....................................................................................................................... 7

ARTICLE II  CLASSIFICATION OF CLAIMS AND

INTERESTS AND TREATMENT THEREOF ..................................................................... 7

ARTICLE III  MEANS OF EXECUTION OF THE PLAN .................................................... 9

ARTICLE IV  EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...................... 10

ARTICLE V  WAIVER OF STAY UNDER RULE 3020(C)................................................ 10

ARTICLE VI  PROVISION FOR SUPERVISION OF THE PLAN AND RETENTION OF JURISDICTION ... 10

ARTICLE VII  DISCHARGE OF ALL CLAIMS .................................................................. 11

## DEFINITIONS

**"Administrative Claim"** means any cost or expense of administration of the Chapter 11 Case allowed under Section 503(b) of the Bankruptcy Code that is entitled to priority under Section 507(a)(1) of the Bankruptcy Code.

**"Allowed Amount"** means the dollar amount of an Allowed Claim.

**"Allowed Claims"** means any claim which has been filed on or before the date designated by the Court or which has been or which is hereafter listed by the Debtor as liquidated in the amount and not disputed or contingent and in either case a Claim to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Bankruptcy Court, or as to which any objection has been determined by any order or judgment of the Court that is no longer subject to appeal. Allowed Claims shall not include interest on the principal amount of said Claim from and after the date upon which this case was filed.

**"Bankruptcy Code"** means Title 11 of the United States Code, as the same was in effect on the Filing Date.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of New York.

**"Bar Date"** means July 7, 2017, which was the deadline to file proofs of claim in the Chapter 11 Case as provided by order of the Bankruptcy Court.

**"Cash"** means lawful currency of the United States and cash equivalents.

**"Chapter 11"** means Chapter 11 of the Bankruptcy Code.

**"Claim"** means a claim against the Debtor or its property as defined in Section 101(5) and construed in Section 102(2) of the Bankruptcy Code.

"**Class**" means a group of claims consisting of Claims or interests which are substantially similar to each other as classified pursuant to this Plan.

"**Confirmation of the Plan**" means the entry of an order of this Court confirming the Plan in accordance with Chapter 11.

"**Confirmation Date**" means the date the Bankruptcy Court enters an order confirming the Plan.

"**Court**" means The United States Bankruptcy Court the Eastern District of New York acting in this case.

"**Debtor**" means Julia Morgunova.

"**Debtor's Residence**" means the real property located at 2759 Whitman Drive, Brooklyn, New York.

"**Disbursing Agent**" means Rosenberg, Musso & Weiner or such other person as may be designated by the Bankruptcy Court.

"**Disputed Claim**" means a Claim or a request for payment of an administrative expense, as the case may be, as to which: (a) a proof of claim or a request for payment of an administrative expense as the case may be, has been filed with the Court or deemed filed under applicable law or order of the Court; (b) an objection has been timely filed or which the Debtor states in this Plan that an objection will be filed; and (c) such objection has not been (i) withdrawn, (ii) overruled or denied in whole or part by a Final Order, or (iii) granted in whole or in part by a Final Order. Prior to the time that an objection has been or may be timely filed, for purposes of this Plan, a Claim shall be considered a Disputed Claim: (i) to the extent and only to the extent amount of the Claim specified in the proof of claim exceeds the amount of any corresponding Claim listed by the Debtor in is Schedules; (ii) any corresponding Claim listed by the Debtor in its Schedules as disputed, contingent or unliquidated, irrespective of the amount scheduled; or (iii) if no

corresponding Claim has been listed by the Debtor in its Schedules. The sole disputed claim in the instant case was filed by Igor and Yelena Pustilnik (the "Pustilniks"). After Debtor filed an objection to the Pustilniks' Claim, the parties settled the action for the sum of $25,000.00.

**"Effective Date"** means the date on which the order confirming the Plan is entered as the Plan provides for waiver of the stay under Federal Rule of Bankruptcy Procedure 3020(e).

**"Investment Property"** means the property located at 1380 E. 70th Street, Brooklyn, New York.

**"Filing Date"** means March 29, 2017.

**"Lien"** has the meaning set forth in section 101(37) of the Bankruptcy Code and shall include mortgages, pledges, other security interests, encumbrances, and charges.

**"Plan"** means this Plan of Reorganization.

**"Plan Contribution"** means such Cash as shall be necessary to fund the Plan.

**"Priority Claim"** means any Allowed Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, other than (a) an Administrative Claim; and (b) a Tax Claim.

**"Pro Rata"** means with respect to the holder of an Allowed Unsecured Claim, the same proportion that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims of such class.

**"Reorganization Case"** means the case of the reorganization of the Debtor commenced by a voluntary petition under Chapter 11 on March 29, 2017 and now pending in this Court.

**"Reorganized Debtor"** means the Debtor on or after the Effective Date.

**"Secured Claim"** means, when referring to a Claim, (a) secured by a Lien on prperty in which the Debtor has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of Court order, or that is subject to a valied right of setoff pursuant to section 553 of the Bankruptcy Code, or (b) Allowed pursuant to the Plan as a Secured Claim.

"**Tax Claim**" means a Claim by a governmental unit entitled to a priority pursuant to any provision of Section 507(a)(8) of the Bankruptcy Code.

"**Unimpaired**" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

"**United States Trustee**" means the United States Trustee for the Eastern District of New York.

"**United States Trustee Fees**" means outstanding fees due to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6), and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. §3717.

"**Unsecured Claim**" means a claim against the Debtors that is not an Administrative Claim, Tax Claim or Priority Claim.

## ARTICLE I

## UNCLASSIFIED ADMINISTRATIVE AND TAX CLAIMS

Administrative and Tax Claims consist of all Administrative and Tax Claims against the Debtor. As provided by Section 1123(a)(1) of the Bankruptcy Code, Administrative, Statutory, and Tax Claims against the Debtor shall not be classified for purposes of voting or receiving Distributions under the Plan. All such Claims shall be treated separately as unclassified Claims on the terms set forth in this Article.

1. <u>Administrative Claims</u>.

Each holder of an Allowed Administrative Claim, other than current payables, shall be paid in full on the Effective Date or upon such other terms that may be agreed upon by the holders of such Claim and the Debtor. Current payables, which are debts incurred by the Debtor in the ordinary course of business and not expenses of administration in this case or unpaid post-petition taxes, will be paid in the ordinary course of business according to the terms established

between the Debtor and such creditors. Professional fees for the Debtor's attorneys are estimated at $75,000.00 and fees for Gary Lambert, CPA, the Debtor's accountant are estimated at $15,000.00.

2. <u>Statutory Claims</u>

All outstanding fees due to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6) will be paid on the Effective Date. The Reorganized Debtor shall pay all statutory fees due and payable under 28 U.S.C. §1930, plus accrued interest under 31 U.S.C. §3717, on all disbursements, including plan payments and disbursements inside and outside of the ordinary course of business, until entry of a final decree, dismissal, or conversion of the case to chapter 7. The Debtor will owe the US Trustee's Office $4,875.00 for the fourth quarter of 2018. The Debtors will file an application and proposed order for a final decree within fourteen (14) days of full administration of the Debtor's estate.

3. <u>Tax Claims.</u>

Tax Claims consist of Claims of governmental units entitled to priority treatment, but does not include secured claims for real estate taxes or water charges. The Internal Revenue Service ("IRS") filed a claim in the amount of $5,718.16, of which $3,375.12 is priority and $2,343.04 is general unsecured. All funds due to the IRS will be paid in full on the effective date. The NYS Department of Taxation and Finance ("NYS") filed a secured claim for $5,153.51. At the closing, $10,000.00 was put into escrow to cover the State's claim.

**ARTICLE II**
**CLASSIFICATION OF CLAIMS AND**
**INTERESTS AND TREATMENT THEREOF**

Claims against the Debtors and interests in the Debtors (other than Administrative,

Statutory, and Tax Claims) are hereby classified as follows:

        (a)    <u>Class 1</u> consists of the secured claim of The New York City Water Board in the amount of $51,105.98 for water charges for the Debtor's Residence. This claim will be paid in full with 9% interest over five years, in equal monthly paymentys of $1,060.88

        (b)    <u>Class 2</u> consists of the secured claim of Select Portfolio Servicing Inc., as servicer for Deutsche Bank National Trust Company, as Trustee, on behalf of the holders of WaMu Mortgage Pass-through Certificates, Series 2005-AR2 (hereinafter, "SPS" or "Bank") which holds the mortgage on the Debtor's residence at 2759 Whitman Drive, Brooklyn, New York. The debtor applied for loss mitigation on May 24, 2017, which was granted by order of this Court dated June 17, 2017. Although SPS indicated that a true modification was not available because the debtor was not on the note or mortgage, it agreed to rewrite the mortgage, the terms of which would be incorporated within the chapter 11 Plan, and assumed by the debtor following the confirmation of same. Pursuant thereto, the Bank and the Debtor executed a "Stipulation for Plan Treatment on First Lien Secured by Real Property at 2759 Whitman Drive, Brooklyn, New York 11234" (the "Stipulation"). The stipulation indicates that SPS would have a secured claim in the sum of $1,976,337.48. The term of the rewritten mortgage will be 360 months with all amounts due upon the maturity date of December 1, 2034. The interest rate will be 5.25%, with monthly principal and interest payments of $10,913.41. The first payment under these terms was due on November 1, 2017, in the sum of $13,222.07, which includes an escrow for taxes and insurance, and the debtor has been making the payments. Upon the effective date, the rewritten mortgage will go into effect and the debtor shall pay SPS according to the terms of the rewritten mortgage. A copy of the Stipulation is annexed as Exhibit A and the terms of the Stipulation are incorporated in the Plan.

(c) <u>Class 3</u> consists of the secured claim of Ocwen Loan Servicing ("Ocwen") which holds the mortgage on the Debtor's real property at 1380 East 70th Street, Brooklyn, New York. On October 23, 2018, the debtor sold the Investment Property. At the closing, Ocwen received $689,863.82, representing payment in full satisfaction of the Note and Mortgage.

(d) Class 4 consists of creditors with judgment liens against the Investment Property. Delta Management LLC held a judgment lien in the sum of $27,505.64, but was willing to accept $12,000.00 in full satisfaction of the debt. A check in the sum of $12,000.00 was sent to Malen and Associates, which is counsel to Delta, following the closing. Xaverian High School held a judgment lien, but was willing to accept $9,867.00 in full satisfaction of its claim. Xaverian was paid and has since issued a satisfaction of Judgment to Debtor.

(d) Class 5 shall consist of those creditors holding Unsecured Claims to the extent that such Claims are allowed by the Court. Undisputed Unsecured claims include the Unsecured portion of Claim 7-2, filed by the IRS, which amounts to $2,343.04. The Debtor had filed an objection to claim 9-1 of the claims register, which was filed by Igor and Yelena Pustilnik. Thereafter, the parties settled the matter for the sum of $25,000.00. Finally, the debtor has a pending motion to expunge claim 4, filed by BMW, and claim 6, filed by AT&T Mobility. No objection to the motion, which is returnable December 12, 2018, has been filed as of the date of the Plan. If claims four and six are expunged, unsecured claims will total $46,775.81. The Debtor will pay, through the Disbursing Agent, all allowed unsecured claims, including claims 4 and 6 if those claims are allowed. This class is unimpaired under the Plan.

## ARTICLE III

## MEANS OF EXECUTION OF THE PLAN

The proceeds necessary to make all the payments provided for in the Plan will come from the net proceeds from the sale of the Debtor's Investment Property, and the personal funds of the debtor. On March 9, 2018, this Court signed an order authorizing the debtor to retain Cornerstone Real Estate and Management Corp. as real estate broker to the Debtor. After its retention, Cornerstone proceeded to market the Investment Property. Ultimately, Cornerstone and a co-broker, Korr Realty, found purchasers who made an offer of $840,000.00. The closing on the sale of the Investment Property was held on October 23, 2018.

At the closing, the debtor paid closing costs, Ocwen, and liens on the Investment Property. Liens and closing costs amounted to $53,942.28, leaving a balance of $109,408.90. From that amount the debtor must pay Cornerstone 3%, or 25,200.00, leaving $84,208.90. The debtor needs $94,875.00 to pay administrative expenses and $46,775.81 to pay unsecured creditors, leaving a shortfall of $57,441.91. The debtor will use personal and family funds to pay the difference.

## ARTICLE IV

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor does not have any executory contracts or unexpired leases.

## ARTICLE V

## WAIVER OF STAY UNDER RULE 3020(e)

The Plan shall be effective upon entry of an order confirming the Plan. The stay provided under Federal Rule of Bankruptcy Procedure 3020(e) is waived.

## ARTICLE VI

## PROVISION FOR SUPERVISION OF THE PLAN
## AND RETENTION OF JURISDICTION

The Court shall retain jurisdiction over the Chapter 11 Case for the purpose of determining all disputes relating to Claims and other issues presented by the Plan, to issue such order as may be necessary for the confirmation of the Plan, to fix the compensation of professionals retained by order of the Court, and to determine all other matters which may be pending on the date that the Plan is confirmed. The Court shall retain jurisdiction to resolve all Disputed Claims. Objections to Disputed Claims shall be filed before the Confirmation Date. The Disbursing Agent shall pay the non-disputed portion of a Disputed Claim in accordance with the Plan provisions for payment of a claim in its Class. This Plan may be altered, amended, and modified by the Debtor before or after the Confirmation Date as provided in 11 U.S.C. Section 1127 of the Bankruptcy Code.

## ARTICLE VII

## DISCHARGE OF ALL CLAIMS

Except as otherwise provided by this Plan, the rights afforded in this Plan shall be in exchange for complete discharge and release of all Claims of any kind whatsoever arising prior to the Confirmation Date, against the Debtor or any of the Debtor's assets or property. Upon the Effective Date, the Debtor and the Reorganized Debtor shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims and Interests, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(I) of the Bankruptcy Code. Except as provided in the Plan, as of the Confirmation Date, all persons that hold or have held a Claim or other liability that has been discharged are permanently enjoined from commencing or continuing any action or other proceeding against the Debtor that is inconsistent with the Plan, enforcing any

judgment against the Debtor, or creating, perfecting, or enforcing any lien against the Debtor.

Dated: Brooklyn, New York

By: ___/s/_____
JULIA MORGUNOVA